## Pond Creek Coal Company v. Phillips.

(Decided October 19, 1916.)

### Appeal from Pike Circuit Court.

Appeal and Error.—Evidence examined and found to sustain judgment of chancellor.

AUXIER, HARMAN & FRANCIS for appellant.

CHILDERS & CHILDERS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

The questions in this case are purely of fact and grow out of a dispute between the Pond Creek Coal Company and Phillips as to certain items in connection with a timber contract.

It appears from the evidence that one Daniels in 1912 made a contract with the coal company by which he was to cut and saw all the timber 12 inches and up in diameter on a piece of land owned by the coal company known as the Tucker tract, for which the coal company was to pay him ten dollars per thousand feet. Daniels assigned his contract to one Sparks, and Sparks assigned it to the appellee Phillips.

There is some dispute as to the terms of the contract, but the weight of the evidence, we think, sustains the contention of Phillips that under the contract he had the right to saw into lumber all merchantable timber on the tract that was 12 inches or over in diameter.

Wilson, the manager of the coal company, however, testifies that under the contract with Daniels, as well as with Sparks and Phillips, it was not agreed that they should cut and saw all the timber over 12 inches in diameter on the Tucker tract but only such timber over 12 inches in diameter as they were given bills to cut, and in addition to this there was reserved such timber as the coal company might require for other purposes, such as cribbing and for posts.

After Phillips had commenced work under this contract and had manufactured a good deal of the timber, he was ordered to stop work by the coal company, and thereafter brought this suit against the coal company to recover damages on account of their alleged breach of contract. His suit for damages embraced several items, but as only two of them, outside of the terms of the contract, are in dispute on this appeal, we will confine the opinion to these two items, having heretofore determined that the weight of the evidence supports Phillips' view of the contract.

By agreement of parties the case although a common law action was transferred to equity, and the circuit judge in his opinion deciding the case found that Phillips had a contract as the assignee of Daniels and Sparks to cut into lumber all the merchantable trees 12 inches and up in diameter standing on the Tucker tract.

He further found that after Phillips had commenced work under his contract he was wrongfully prevented by the coal company from completing the contract. He further found that out of the timber which Phillips had a right to cut and saw the coal company took trees that would make 50,000 feet of lumber and put them into an abutment, in addition to using 5,000 feet for cribbing or cross logs. That there was 12,424 feet of lumber in logs that had been cut in the woods by Phillips, and that the trees left standing in the woods which he had a right to manufacture into lumber under his contract would have made 75,000 feet, making a total of 142,424 feet of lumber covered by the contract which Phillips was prevented from cutting by the company's breach of the contract.

The court further found that if Phillips had been permitted to complete the contract and manufacture into lumber the 142,424 feet of lumber, he would have made a profit thereon of five dollars per thousand feet, and so he gave Phillips a judgment on this item for $712.12. The court further found that Phillips was entitled to $150 on account of money paid out by him for removing tree tops and other obstructions that the coal company had placed in roadways and passways, to the unobstructed use of which Phillips was entitled while engaged in manufacturing the lumber.

It might further be said at this point that the company admitted its indebtedness to Phillips in the sum of $564.19, which sum represented the amount that the company under its contract with .Phillips held back on the work that he had done.

On this appeal it is the contention of the coal company that Phillips was not prevented from manufacturing into lumber anything like 142,424 feet of lumber, and that if it should be assumed that he was prevented from manufacturing this number of feet, his profit would not have amounted to more than two dollars on the thousand in place of five dollars as allowed by the court. The other error in the judgment relied on by the coal company is the allowance to Phillips of $150 on account of expense incurred in removing obstructions that the coal company wrongfully put in the roadways and passways.

Taking up first the number of feet of lumber that Phillips was prevented from manufacturing, there is much dispute in the evidence. It will be observed that

the timber that Phillips claimed to have been prevented from sawing into lumber was divided into three classes: (1) the trees that he had a right to saw into lumber and that were put in the abutment; (2) the logs that had been cut by him and that were on the ground unsawed; (3) the timber standing on the ground that he had the right to cut and saw.

The evidence, as to the amount of lumber that could have been made out of the logs 12 inches in diameter and over which were put in the abutment, is so contradictory and the estimates of the witnesses so widely apart, that it is impossible to arrive at any satisfactory estimate of the lumber that could have been sawed out of the logs used in this abutment that Phillips had the right under his contract to manufacture into lumber.

Trout, Smith, May, Layne and other witnesses for Phillips, who hauled logs that were placed in the abutment, said, in substance, that all of the logs hauled by them were over 12 inches in diameter, some of them being a great deal larger, while the witnesses for the coal company said that many logs in the abutment, in fact, a majority of them, were under 12 inches in diameter and many of them unsuitable to convert into lumber.

Fields and Ball testified that they made as careful a measurement of the merchantable logs in the abutment over 12 inches in diameter as could be made, and that, estimating the product of these logs according to the usual method of measurements, 49,862 feet of lumber could have been manufactured out of them. Other witnesses who had not made so careful an estimate as Fields and Ball put the amount of lumber that could have been manufactured out of these logs at from 50,000 to 75,000 feet.

On the other hand, Jarret and Varney, witnesses for the coal company, testified that they made measurements of the merchantable logs in the abutment over 12 inches in diameter, and they estimated that these logs would make about 5,000 feet of lumber.

The lower court, as we have stated, found that the merchantable logs over 12 inches in diameter in the abutment would have made 50,000 feet of lumber, and after reading and considering the evidence we have come to the conclusion that this estimate is reasonably fair considering the contradictory nature of the evidence; and giving to the judgment of the lower court the weight to

which it is entitled, we adopt its estimate of the amount of lumber that could have been made out of the logs in the abutment.

J. B. Deskins said that he measured the logs that had been cut by Phillips but not sawed and they would have made 12,424 feet of lumber, and we do not find any substantial contradiction of this estimate, and so we adopt the finding of the lower court as to this item.

Empsy Varney testified that he was employed by the Pond Creek Coal Co. to manufacture the trees into lumber after Phillips quit and that he cut 75,000 feet out of the trees covered by Phillips' contract and that there was about 35,000 or 40,000 feet of lumber yet in the trees, and there does not appear to be any substantial contradiction of this evidence, so that we adopt the views of the lower court as to this item.

As to the profit Phillips could have made if he had been allowed to complete his contract, the testimony in his behalf shows that his profit would have been $5 per thousand feet, while the evidence for the coal company is to the effect that a profit on such a contract as he had would not exceed $2 per thousand feet. Phillips based his estimate of the profit he could have made, if he had been allowed to complete the contract, on the profit he did make on the lumber that he had sawed, and in support of his statement as to the profit he could have made he exhibited statements for the months of June to March, inclusive, showing his receipts for each month as well as his expenses, and these itemized exhibits showed that he had made a profit of more than $5 on each thousand feet of lumber. He further testified that he would have made a larger profit on the trees not cut because it was more convenient to deliver the lumber from them than it was to deliver the lumber he had sawed during the months mentioned.

In contradiction of this, Hatfield, a witness for the coal company, said he was an experienced sawmill man, and in his opinion it would cost from $8 to $9 a thousand feet to deliver the lumber according to Phillips' contract; and John Runyons, another experienced sawmill man, said he did not think the lumber could be manufactured and delivered under Phillips' contract at less than $8 or $8.50 a thousand, thus leaving a profit of from $1 to $2 a thousand feet.

We think, however, that Phillips' evidence, supported as it was by statements showing his receipts and expenses, is entitled to more weight than the opinions of Runyons and Hatfield. Consequently we do not find that the lower court erred in fixing Phillips' profit at $5 a thousand feet.

The next item is the allowance of $150 on account of obstructions placed in Phillips' way by the coal company. Upon this point Phillips testified that, when the coal company cut the trees that it put in the abutment, it left the laps and brush from these trees across his roadways, obstructing them in such a manner that it cost him about $150 to remove the obstructions; and the evidence of Phillips upon this point is supported by that of Grover Fields and Thomas Justice.

On the other hand, Wilson, a witness for the coal company, said he thought the obstructions could have been removed for about $5.

We get the impression from the evidence that the coal company was not disposed to show Phillips any favors but was rather inclined to put him to as much inconvenience and trouble as it could. That the roadways, to the free use of which he was entitled in hauling lumber and logs, were obstructed, is not disputed, and it can easily be understood that laps of trees and brush put across roadways would seriously obstruct them and put the person entitled to their use to considerable expense, depending of course on the extent of the obstruction. Just what it would cost to remove obstructions like this, happening at different times and in different ways and at different places, is of course very hard to estimate, but we are inclined to think that the evidence of Phillips as to what it cost is entitled to as much weight as the evidence for the coal company, and so we approve the finding of the lower court upon this point.

The contradictory evidence upon these disputed issues makes it exceedingly difficult, as we have said, to reach a satisfactory conclusion, but after giving to the whole case a careful consideration and to the judgment of the lower court the weight to which it is entitled, we think the judgment should be affirmed, and it is so ordered.